CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAR 07 2017

JULIA C. DUDLEY, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 3:14CR00025-01 |
| | ) | (Civil Action No. 3:16CV81171) |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SOLOMON A. FRANCIS, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Solomon A. Francis, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The government has filed a motion to dismiss, and the time allotted for Francis to respond has expired, making the matter ripe for consideration. For the reasons that follow, the government's motion to dismiss will be granted and Francis' motion to vacate will be denied.

**Background**

On July 23, 2014, Francis was named in a multi-count indictment returned by a grand jury in the Western District of Virginia. The indictment charged Francis with the following offenses: conspiracy to distribute 280 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846 (Count One); conspiracy to distribute a detectable amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and 846 (Count Two); distribution of a detectable amount of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Seventeen); distribution of a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Count Eighteen); and distribution of a detectable amount of cocaine base within 1,000 feet of a playground, in violation of 21 U.S.C. §§ 841(a)(1) and 860 (Count Twenty-One).

On February 6, 2015, Francis entered pleas of guilty to Counts One and Two of the indictment, pursuant to a written plea agreement. Under the terms of the plea agreement, the parties agreed that Francis should be held responsible for between 1,000 and 3,000 kilograms of marijuana for purposes of calculating his base offense level under § 2D1.1 of the United States Sentencing Guidelines.[1] The parties also stipulated that three enhancements were warranted in Francis' case: a one-level enhancement under § 2D1.2(a)(2) for engaging in drug trafficking in a protected location; a two-level enhancement under § 2D1.1(b)(1) for possessing a dangerous weapon; and a two-level enhancement under § 3B1.1(c) for being an organizer, leader, manager, or supervisor.

For its part, the government agreed to move to dismiss the remaining counts of the indictment in which Francis was charged. The government also agreed to recommend a three-level reduction for acceptance of responsibility under § 3E1.1 of the Sentencing Guidelines, if Francis, in fact, accepted responsibility for his actions and complied with his obligations under the plea agreement. In exchange, Francis agreed to waive the right to appeal his sentence "on any ground" except "as to any issue which cannot be waived, by law." Plea Agreement at 7, Docket No. 7. Francis also agreed to "waive any right [he] may have to collaterally attack, in any future proceeding, any order issued in this matter, unless such attack is based on ineffective assistance of counsel." Id. at 8.

Francis initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Francis affirmed that he had

---

[1] When a defendant is involved in the distribution of multiple controlled substances, the Sentencing Guidelines provide for a conversion of each drug to its marijuana equivalent, based on ratios set forth in the Guidelines. See U.S.S.G. § 2D1.1, app. n. 8.

2

carefully reviewed every section of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms. See id. at 12.

During the plea hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Francis possessed the capacity to make a voluntary, intelligent, and informed decision. Rule 11 H'rg Tr. at 7-8, Docket No. 350-1. The court also established that Francis understood the charges to which he was pleading guilty, as well as the purpose of the hearing. Id.

The court instructed the prosecutor to review the charges to which Francis was pleading guilty, the applicable statutory penalties, and the most important provisions of plea agreement that Francis had reached with the government. The prosecutor advised that Francis had agreed to plead guilty to conspiracy to distribute 280 grams or more of cocaine base (Count One) and conspiracy to distribute heroin (Count Two). The prosecutor explained that Count One carried "a mandatory minimum sentence of ten years in prison," along with "a term of supervised release of at least five years." Id. at 9. He explained that Count Two carried a "maximum . . . term [of imprisonment] of up to 20 years, plus a term of supervised release of at least three years." Id. The prosecutor then outlined several sections of the plea agreement, including Section B(2), in which Francis stipulated that he should be responsible for between 1,000 and 3,000 kilograms of marijuana, and that he should receive enhancements under §§ 2D1.1(b)(1), 2D1.2, and 3B1.1(c) of the Sentencing Guidelines. Id. at 10-11. The prosecutor also summarized Sections C(1) and (2) of the plea agreement. He explained that, pursuant to those sections, Francis was "waiving his right to appeal and collaterally attack his conviction subject to certain exceptions," including an exception for "ineffective assistance of counsel claims." Id. at 11. Upon being asked if the

3

prosecutor's summary of the plea agreement was consistent with his own understanding of the agreement, Francis responded in the affirmative. Id. at 12.

The court then questioned Francis regarding his understanding of particular terms of the plea agreement. Francis acknowledged that he had agreed to "give[] up the right to appeal any issue to a higher court, . . . save for those very limited number of issues for which waiver of appeal is not permitted." Id. at 14, 29. Francis also affirmed that he had agreed to "give up [his] right to collaterally attack the court's judgment down the road, save for an attack based on a claim for ineffective assistance of counsel." Id. at 14. Additionally, the court specifically inquired as to whether Francis was voluntarily pleading guilty. In response, Francis affirmed that no one had promised him a particular outcome or sentence, that no one had attempted to coerce or compel him to plead guilty, and that he was "considering a plea of guilty because [he believed that it was] best for [him] and because [he was], in fact, guilty of the crimes charged in Counts 1 and 2." Id. at 13.

As part of his agreement with the government, Francis signed a multi-page statement of facts. The prosecutor summarized the statement of facts during the Rule 11 hearing, as follows:

> Mr. Francis came to the Charlottesville area from Culpeper and was identified as the leader of a group of individuals that basically set up shop in the residence of Renee Harris, who lived at Riverside Avenue. Mr. Francis and his co-conspirators weren't living there, but that was sort of the base of operations where they stored narcotics and firearms. Mr. Francis would drive around with other co-conspirators in vehicles, often times rented. Informants that bought drugs from Mr. Francis and co-conspirators said they almost always had a firearm in their possession. They described several different firearms, but they described an assault rifle specifically. They described the color and its appearance. That firearm was recovered from Renee Harris's house after a shooting that occurred in April of 2014, and when shown the picture, several of the informants and cooperators said that that was in the possession of Mr. Francis and other co-conspirators when they would sell drugs.

4

There was heroin and crack cocaine involved with the conspiracy. Mr. Francis was present during several recorded and controlled buys. There were also phone records obtained. There were rental vehicle records. There were some cell phone dumps that occurred. Hotel records. There were several informants that participated in controlled buys that were recorded. There were also several addicts that came in and gave statements and testified in front of a federal grand jury, describing the organization and operation of the conspiracy.

Quite frankly, . . . Mr. Francis was sort of the identified person that was the leader and the organizer and would give instructions to others. I think he was the source of the cocaine and heroin from both New York, and an identified, but unindicted local source, and he would distribute to his co-conspirators to have them sell.

. . . .

Several of the buys that were recorded were either in front of or right behind the apartment of Renee Harris on Riverside Avenue, and that residence is within a thousand feet of two different playgrounds . . . . So there were videotaped transactions occurring outside and in back of her house that were within the protected location.

Id. at 35-36.

The court subsequently inquired of Francis as to whether the prosecutor's summary represented "the state of the evidence in [the] case and what might have been presented if [the] case had gone to trial." Id. at 39. Francis responded in the affirmative. Id.

At the conclusion of the hearing, the court asked Francis whether he was satisfied with his attorney's representation, and whether he had any questions regarding anything that had been said during the hearing. Francis indicated that he was satisfied with the services provided by his attorney, that he understood "everything" that had been discussed during the hearing, and that he did not have any questions for the court. Id. at 40-41. Francis entered pleas of guilty to Counts One and Two of the indictment. The court accepted Francis' pleas and took his plea agreement under advisement. Id. at 42.

5

Prior to the sentencing hearing, a probation officer prepared a presentence report. Consistent with the stipulations in the plea agreement and the statement of facts, the probation officer determined that Francis should be held accountable for between 1,000 and 3,000 kilograms of marijuana and, thus, subject to a base offense level of 31, since the drug offenses occurred near protected locations. See U.S.S.G. § 2D1.2(a)(2) (applying a base offense level of 1, plus the offense level from § 2D1.1 applicable to the total quantity of controlled substances involved in the offense, if the offense occurred near a protected location). Additionally, Francis received a two-level enhancement for possessing a dangerous weapon, a two-level leadership enhancement, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 32. When combined with a criminal history category of III, Francis' total offense level gave rise to an advisory range of imprisonment of 151 to 188 months.

The court conducted Francis' sentencing hearing on October 19, 2015. At that time, the court adopted the presentence report and accepted the plea agreement. The court also granted a substantial assistance motion filed by the government. After considering the factors set forth in 18 U.S.C. § 3553(a), the court imposed a total term of imprisonment of 90 months, to be followed by a five-year period of supervised release. The judgment was entered on October 21, 2015. Francis did not appeal his convictions or sentence.

On June 16, 2016, Francis filed a "motion for reduction/modification of supervised release terms & sentence for good cause," in which he challenged the propriety of the "2 point gun enhancement." Docket No. 314. The court construed Francis' filing as a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Docket No. 337. On August 15, 2016, the court notified Francis of its intent to construe the document as a motion for relief under §

6

2255, as required by <u>Castro v. United States</u>, 540 U.S. 375 (2003). Docket No. 338. The court gave Francis 21 days to advise the court as to whether he objected to the construction or, if not, to file a completed form § 2255 motion stating his claims for relief under the statute.

On August 19, 2016, Francis filed a form § 2255 motion, along with an attached "supplement" setting forth his claim for relief. Docket No. 343. In the supplement, Francis requests that the court "amend his presentence report by deleting the dangerous weapon enhancement" in order to facilitate his entry into the Bureau of Prisons' Residential Drug Abuse Program ("RDAP"). <u>Id.</u>

On November 4, 2016, the government moved to dismiss Francis' § 2255 motion on the basis that Francis waived the right to collaterally attack his sentence. The court notified Francis of the government's motion, as required by <u>Roseboro v. Garrison</u>, 528 F.2d 309 (4th Cir. 1975), and gave him 21 days in which to file a response. As of this date, no response has been filed. The matter is now ripe for review.

## Discussion

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." <u>Blackledge v. Allison</u>, 431 U.S. 63, 71 (1977). "The advantages of plea bargains 'can be secured, however, only if dispositions by guilty plea are accorded a great measure of finality.'" <u>United States v. Lemaster</u>, 403 F.3d 216, 219-220 (4th Cir. 2005) (quoting <u>Blackledge</u>, 431 U.S. at 71). To this end, the government often obtains waivers of appellate and collateral-attack rights from criminal defendants as part of their plea agreements, and the United States Court of

Appeals for the Fourth Circuit has held that such waivers are valid as long as they are knowingly and voluntarily made. See Lemaster, 403 F.3d at 219-220.

The determination of whether a waiver is knowing and voluntary depends "upon the particular facts and circumstances surrounding the case, including the background, experience and conduct of the accused" during the plea colloquy. United States v. Davis, 954 F.2d 182, 186 (4th Cir. 1992) (citation and internal quotation marks omitted). The Fourth Circuit has emphasized that "a defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity'" and "present 'a formidable barrier in any subsequent collateral proceedings.'" United States v. White, 366 F.3d 291, 295 (4th Cir. 2004) (quoting Blackledge, 431 U.S. at 74). Thus, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" Lemaster, 403 F.3d at 221 (quoting Crawford v. United States, 519 F.2d 347, 350 (4th Cir. 1975)). If a district court determines that a petitioner knowingly and voluntarily waived his collateral-attack rights, and that the petitioner's claims fall within the scope of the waiver,[2] the court must dismiss the § 2255 motion without addressing the merits of those claims. See Id. at 222.

---

[2] The Fourth Circuit has recognized a narrow class of claims that fall outside the scope of a valid waiver of appellate or collateral-attack rights. Issues that a defendant could not have reasonably foreseen when entering into a plea agreement, such as the imposition of a sentence above the statutory maximum, the imposition of a sentence based on an constitutionally impermissible factor such as race, United States v. Marin, 961 F.2d 493, 496 (4th Cir. 1992), or the complete denial of counsel at any stage of the proceedings following the entry of the plea, United States v. Attar, 38 F.3d 727, 732-733 (4th Cir. 1994), fall outside the scope of the waiver.

8

Having reviewed the record in this case, the court concludes that Francis' guilty plea and his waiver of collateral-attack rights were knowing and voluntary. Francis initialed every page of the plea agreement, including the page containing the waiver of collateral-attack rights. By signing the plea agreement, Francis affirmed that he had carefully reviewed every section of the agreement with his attorney, that he understood the agreement, and that he was voluntarily agreeing to its terms. Likewise, during the plea hearing, Francis acknowledged that he understood the agreement, that he knew that he was waiving his right to appeal his sentence, and that he knew that he was "giv[ing] up [his] right to collaterally attack the court's judgment down the road." Rule 11 H'rg Tr. at 14. Francis also confirmed that he was satisfied with the services provided by his attorney, that no one had forced him to enter into the plea agreement or to plead guilty, and that no one had made any promises other than those included as terms of the plea agreement.

Francis' testimony at the plea hearing conclusively establishes that he understood the terms of the plea agreement, including the waiver of collateral-attack rights, and that his pleas of guilty were made knowingly and voluntarily. Consequently, based on the existing record, and in the absence of any extraordinary circumstances that would entitle Francis to an evidentiary hearing, the court concludes that the waiver is valid and enforceable. Because Francis' § 2255 motion does not challenge the validity of the plea agreement or assert any claims that would fall outside the scope of a valid waiver of collateral-attack rights, the motion is barred by the waiver.

The court also concludes that Francis' challenge to the propriety of the firearm enhancement is without merit. Section 2D1.1 of the Sentencing Guidelines directs a district court to increase a defendant's base offense level by two levels "[i]f a dangerous weapon

9

(including a firearm) was possessed" during the commission of the offense. U.S.S.G. §
2D1.1(b)(1). The Fourth Circuit has held that the enhancement is appropriate when "the weapon
was possessed in connection with drug activity that was part of the same course of conduct or
common scheme as the offense of conviction." United States v. Manigan, 592 F.3d 621, 630-31
(4th Cir. 2010) (citation and internal quotation marks omitted).

In this case, Francis stipulated, as part of his plea agreement with the government, that a
two-level firearm enhancement was appropriate. The facts supporting the application of the
enhancement were set forth in the statement of facts agreed upon by the defendant. Specifically,
the defendant agreed, in pertinent part, that:

> On or about April 27, 2014, FRANCIS was traveling in a vehicle with several of
> his co-conspirators on Chesapeake Street (which is in the vicinity of co-
> conspirator Renee Harris' apartment at 366 Riverside Avenue). His vehicle and a
> second vehicle, occupied by additional co-conspirators, were shot at multiple
> times causing both vehicles to crash. The shooting is believed to have been in
> retaliation [for] two earlier shootings from December 2013 and February 2014.
> After the shooting, FRANCIS and his co-conspirators fled. FRANCIS was found
> by law enforcement inside of 366 Riverside Avenue. After receiving consent
> from co-conspirator Renee Harris to search the premises for weapons and other
> involved individuals, law enforcement recovered a concealed AK-47 rifle and
> partially-loaded magazine. Several informants stated that members of "Culpeper
> & Associates," and specifically FRANCIS, were routinely armed during drug
> sales and specifically described the above-mentioned AK-47.

Statement of Facts 3, Docket No. 218. Such facts, which were also included in the presentence
report, were clearly sufficient to support the application of the firearm enhancement. Moreover,
because Francis did not object to the report's factual findings at the sentencing hearing, "the
government [met] its burden of proving those facts by a preponderance of the evidence, and the
court was "free to adopt the findings . . . without more specific inquiry or explanation." United
States v. Revels, 455 F.3d 448, 451 n.2 (4th Cir. 2006) (citations and internal quotation marks
omitted); see also United States v. Gilliam, 987 F.2d 1009, 1013 (4th Cir. 1993) ("[T]he

10

Government carries its burden if a defendant fails to properly object to a recommended finding in a presentence report that the court determines to be reliable.").

In the instant motion, Francis does not deny that he possessed a firearm or dispute the accuracy of the facts summarized in the statement of facts and the presentence report. Instead, he merely requests that the court remove the firearm enhancement from his presentence report in order to facilitate his entry into RDAP. At this stage of the proceedings, however, the court is without authority to grant such relief. See United States v. Hawkins, 421 F. App'x 261, 262 (4th Cir. 2011) (noting that a motion to modify a presentence report must be filed within 14 days of receiving the document) (citing Fed. R. Crim. P. 32(f)(1)); see also United States v. Catabran, 884 F.2d 1288, 1289 (9th Cir. 1989) ("[O]nce the district court has imposed sentence, the court lacks jurisdiction under Rule 32 to hear challenges to a presentence report."). In the absence of any viable challenge to the validity of his sentence, Francis is not entitled to relief under § 2255.

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Francis' § 2255 motion. Additionally, because Francis has failed to make a substantial showing of the denial of a constitutional right, the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

DATED: This 7th day of March, 2017.

_____
Chief United States District Judge

11